UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRYNA PASTAVALAVA,<br><br>    Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Acting Secretary of Homeland Security,[1] et al.,<br><br>    Defendants. | 1:19-cv-09211-NLH<br><br>**OPINION** |

**APPEARANCES:**

TATIANA S. ARISTOVA
KHAVINSON & ASSOCIATES PC
10 SCHALK'S CROSSING ROAD
SUITE 501-295
PLAINSBORO, NJ 08536

    *On behalf of Plaintiff*

ENES HAJDARPASIC
UNITED STATES ATTORNEY'S OFFICE
DISTRICT OF NEW JERSEY
970 BROAD ST
NEWARK, NJ 07102

    *On behalf of Defendants*

**HILLMAN**, **District Judge**

    This is an action pursuant to the Immigration and

---

[1] Plaintiff filed her complaint on April 2, 2019. Alejandro Mayorkas was appointed to serve as the Secretary of the Department of Homeland Secretary by President Biden on February 1, 2021.

Nationality Act ("INA") § 310(c), 8 U.S.C. § 1421(c), seeking review of a decision by the United States Citizenship and Immigration Services ("USCIS") to deny the application for United States citizenship by Plaintiff Iryna Pastavalava, who is a lawful permanent resident ("LPR") of the United States.

Currently pending before the Court is Plaintiff's motion for summary judgment, and Defendants' cross-motion for summary judgment.[2]  For the reasons expressed below, the Court will deny Plaintiff's motion and grant Defendants' motion.

## BACKGROUND

On December 18, 2004, Plaintiff, who is a citizen of Belarus, married her prior spouse.  They divorced on July 7, 2006.  On August 11, 2006, Plaintiff filed, though counsel, a Form I-360, Petition for Amerasian, Widow(er) or Special Immigration, pursuant to section 204(a)(1) of the Immigration and Nationality Act, as amended by the Battered Immigrant Women

---

[2] This Court denied Plaintiff's first motion for summary judgment because it did not include "a statement of material facts not in dispute" in accordance with L. Civ. R. 56.1(a), and it failed to attach any documentation to support her claims, including documents such as her applications to USCIS, USCIS's denial of her N-400, and a personal declaration or affidavit to attest to the factual assertions in her brief.  (Docket No. 19.) Plaintiff refiled her motion in compliance with the Rules and this Court's Opinion (Docket No. 22), and Defendants filed a responsive cross-motion for summary judgment (Docket No. 24). Also pending is Defendants' motion to seal several of their exhibits submitted in support of their opposition to Plaintiff's summary judgment motion.  (Docket No. 26.)  Defendants' motion to seal will be addressed in a separate Order.

Protection Act of 2000 ("Form I-360") seeking classification as the battered or abused ex-spouse of a United States citizen. Plaintiff's I-360 petition was accepted by USCIS on September 20, 2006.

Plaintiff married her current spouse on September 18, 2006. Under the governing regulations, remarriage prior to the approval of the Form I-360 is a statutory basis for the denial of a self-petition.[3]  Remarriage prior to the approval of the Form I-360 is also a statutory basis for automatically revoking an approved self-petition.

On February 21, 2008, USCIS approved the Form I-360 classifying her as she requested.  On September 30, 2010, USCIS approved Plaintiff's Form I-485, application for adjustment to lawful permanent resident ("Form I-485"), even though Plaintiff was ineligible to adjust by virtue of her remarriage during the pendency of her I-360.  On November 20, 2018, USCIS, recognizing the prior error, denied Plaintiff's Form N-400 application for naturalization ("N-400") determining her to have been ineligible to adjust, and thus ineligible to naturalize.  On February 28, 2019, USCIS affirmed its decision.

---

[3] The history of and statutory framework for a so-called "self-petition" is set forth below.  See *infra* pp. 7-12.

Plaintiff filed a five-count complaint against USCIS[4] claiming, among other things, that she was not aware of the requirement not to marry, and USCIS never advised her of the requirement not to marry, neither in the I-360 receipt, nor in the request for evidence with regard to the I-360 petition. Plaintiff claims that if USCIS believed that the I-360 was approved in error, form I-485 should have been denied at that time.

Plaintiff argues that USCIS should now be estopped from claiming that Plaintiff's I-485 petition was approved in error because (1) she was completely truthful in all of her applications, (2) USCIS never advised her of the requirement not to marry or of the requirement to keep USCIS updated as to her marital status, and (3) USCIS had approved Plaintiff's form I-485 Application to Adjust status, with full knowledge and complete disclosure of Plaintiff's marital status.

Additionally, Plaintiff also asserts that the requirement that I-360 self-petitioning applicants must remain unmarried for the duration of their I-360 proceedings, which may last for

---

[4] The named defendants are the Secretary of the Department of Homeland Security, the Director of the U.S. Citizenship and Immigration Services, and the District Director, U.S. Citizenship and Immigration Services, Mt. Laurel, NJ.  The holder of each of these positions has changed since Plaintiff filed her complaint.  For ease of reference, the Court will refer to the defendants as "USCIS" or "Defendant."

4

years as shown by her situation, is invalid and unlawful, is unconstitutional, and infringes upon one of the most fundamental constitutional rights - the right to marry.

Plaintiff further claims that USCIS's denial of her N-400 naturalization application violates the U.S. Constitution's prohibition against cruel and unusual punishment.  Plaintiff claims that she had an extremely damaging experience in her prior marriage, which led to her filing of the I-360 petition. Plaintiff claims that it took her a long time to recover and put her life back together with the help of her current husband.

Plaintiff further explains that her second marriage was not entered into for any immigration purposes because her current husband was a lawful permanent resident at the time of the marriage, he was not trying to receive any immigration benefit via this marriage, and he is now a citizen of the United States. Plaintiff claims that the decision to marry was essential to her pursuit of happiness and the perpetual denial of her right to seek U.S. citizenship constitutes a cruel and unusual punishment for her bona fide ignorance of the legal requirements relating to form I-360 petitions and for the exercise of her constitutional right to marry.

Plaintiff requests that the Court vacate the decision by USCIS as arbitrary and capricious, an abuse of discretion, and otherwise inconsistent with the law, and remand to the District

Director for a proper decision in conformance with the law. Alternatively, Plaintiff seeks that this Court conduct a *de novo* hearing on her application for naturalization.

## DISCUSSION

### A. Subject Matter Jurisdiction

Subject matter jurisdiction is premised on 28 U.S.C. § 1331; 5 U.S.C. § 706(2)(a); 5 U.S.C. § 702; 8 U.S.C. § 1421(c); 28 U.S.C. § 1361; and the Administrative Procedures Act, 5 U.S.C. § 551, 702, 706(2)(a).

### B. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**C.   Analysis**

The facts of this case present a compelling narrative of a female immigrant who overcame an abusive relationship through the support of new spouse, an immigrant himself and now a naturalized citizen, resulting in the birth of a son.  As Plaintiff describes herself, she is a person of good moral character, is employed, pays taxes, and has no criminal record while being a lawful permanent resident of the United States.  The Court has no reason to doubt that Plaintiff would continue on that positive path as a citizen of the United States.

The resolution of Plaintiff's claims, however, may not be resolved on this Court's perception of whether Plaintiff would make a good citizen.  Rather, Plaintiff's claims hinge on the application of the applicable statutes enacted by Congress and the determination of whether Defendant violated those statutes by denying Plaintiff's naturalization application.  The Court finds that Defendant properly applied the applicable laws in denying Plaintiff's petition for naturalization and will grant its motion for summary judgment.

Defendant's brief sets forth the statutory framework for Plaintiff's self-petitioning naturalization application.[5] (Docket No. 24-1 at 9-11.)  Congress first granted an abused

---

[5] As Plaintiff did not file any response to Defendant's brief, this recitation of the applicable statutes is uncontested.

7

spouse the ability to self-petition in 1994, when it enacted the Violent Crime Control and Law Enforcement Act of 1994, Pub, L, 103-322, 108 Stat 1796 (Sep. 13, 1994).  Section 40701, located in Subtitle G, amended section 204 of the INA (8 U.S.C. § 1154) to permit an abused spouse and children of a United States citizen or lawful permanent resident to file a petition for immigrant status.  Congress observed the following:

> Under current law only the United States citizen or lawful permanent resident spouse is authorized to file a relative petition, and this spouse maintains full control over the petitioning process. He or she may withdraw the petition at any time for any reason. The purpose of permitting self-petitioning is to prevent the citizen or resident from using the petitioning process as a means to control or abuse an alien spouse.

H.R. Rep. 103-395, 1993 WL 484760 at p. 41.

Under the amended section 204 of the INA, § 1154, an abused alien spouse would no longer have to rely on her abusive U.S. citizen or lawful permanent resident spouse to petition for immigrant status on her behalf.  On March 26, 1996, the legacy Immigration and Naturalization Service (INS), predecessor to the USCIS, promulgated an interim rule to implement the changes mandated by section 40701 of the Violent Crime Control and Law Enforcement Act of 1994.  The rule outlined the various provisions for abused spouses of U.S. citizens and lawful permanent residents to file a self-petition.  In explaining the interim rule, the legacy INS stated the following:

8

> The rule further provides, however, that a pending spousal self-petition will be denied or an approved self-petition will be revoked if the self-petitioner chooses to remarry before becoming a lawful permanent resident. By remarrying, the self-petitioner has established a new spousal relationship and has shown that he or she no longer needs the protections of section 40701 of the Crime Bill to equalize the balance of power in the relationship with the abuser.

The implementing regulatory language at 8 C.F.R. § 204.2(c)(1)(ii) states:

> The self-petitioning spouse must be legally married to the abuser when the petition is properly filed with the Service. A spousal self-petition must be denied if the marriage to the abuser legally ended through annulment, death, or divorce before that time. After the self-petition has been properly filed, the legal termination of the marriage will have no effect on the decision made on the self-petition. The self-petitioner's remarriage, however, will be a basis for the denial of a pending self-petition.

Finally, the interim rule at 8 C.F.R. § 205.1(a)(3)(i)(E) established that approval of a self-petition made under section 204 of the INA is automatically revoked as of the date of approval: "Upon the remarriage of the spouse of an abusive citizen or lawful permanent resident of the United States when the spouse has self-petitioned under section 204(a)(l)(A)(iii) or 204(a)(J)(B)(ii) of the Act."

In 2000, Congress further amended section 204 of the INA by enacting the Victims of Trafficking and Violence Protection Act of 2000 (VTVPA), Pub. 1. 106- 386, 114 Stat. 1464 (Oct. 28, 2000). Division B of that Act contained the Violence Against

Women Act of 2000 (VAWA 2000).  Pursuant to VAWA 2000 and the VTVPA, seven groups of battered aliens became eligible to self-petition for classification as immediate relatives or preference immigrants under sections 204(a)(1)(A)(iii) or (iv), or 204(a)(1)(B)(ii) or (iii) of the Act.

The Battered Immigrant Women Protection Act of 2000 is contained within the VTVPA.  VTVPA § 1501.  In VTVPA § 1502(a), Congress made three findings.  First, it found that the goal of VAWA 1994 was to remove immigration laws as a barrier that kept battered immigrant women and children locked in abusive relationships.  VTVPA § 1502(a)(1).  Second, it found that providing battered immigrant women and children with protection from deportation freed them to cooperate with law enforcement and prosecutors, without fear that the abuser would retaliate by withdrawing or threatening to withdraw access to an immigration benefit under the abuser's control.  VTVPA § 1502(a)(2).  Third, Congress found that there are several groups of battered women and children who do not have access to the immigration protections of VAWA 1994.  VTVPA §1503(a)(3).

Thus, VTVPA §§ 1503(b) & (c) amended section 204 of the INA to permit an abused alien spouse, who had already terminated her marriage to the abusive U.S. citizen or lawful permanent resident, to self-petition, provided that the alien demonstrated a connection between the legal termination of the marriage

10

within the past two years and battering or extreme cruelty by the spouse. Sections 204(a)(1)(A)(iii)(II)(aa)(CC)(ccc) and 204(a)(1)(B)(ii)(II)(aa)(CC)(bbb) of the INA. Prior to this amendment, a self-petitioning abused spouse was required to be married to the abusive spouse at the time of filing the petition.

Congress also amended section 204(h) of the INA to permit an abused self-petitioning spouse whose petition had already been approved to remarry without having the approval of his or her petition revoked. Under section 204(h) of the INA, remarriage of the alien after approval of the petition would not serve as the sole basis for revocation of the petition. Congress did not refer to the issue of remarriage in the other provisions of section 204 pertaining to abused spouses.

Thus, although Congress broadened the eligibility requirement to include divorced spouses filing within two years of the divorce, it decided only to include the possibility of remarriage in the section pertaining to divorced spouses that had approved petitions but had not adjusted status or entered the United States as a permanent resident. Congress made no provisions for a remarried petitioner to self-petition based upon her prior abusive marriage. Whether knowingly or not, Plaintiff here did just that.

11

Plaintiff divorced her first husband on July 7, 2006. On September 20, 2006, Plaintiff's I-360 application as a battered or abused ex-spouse of a United States citizen was accepted by USCIS. Plaintiff, however, had married her current spouse on September 18, 2006. The applicable version of the VTVPA did not provide the avenue to legal resident status to a person who had divorced her abusive spouse and had remarried prior to her I-360 application.

Plaintiff relates that USCIS never advised her of the requirement not to marry when she filed the I-360, and USCIS never informed her of the requirement to update her marital status. Plaintiff relates that when USCIS approved her Form I-485 application for adjustment to a lawful permanent resident on September 30, 2010, USCIS was aware of her remarriage at that point, but still approved the I-485 based on the previously approved I-360.

Plaintiff contends that the USCIS's unwinding of those approvals when she sought full naturalization in January 2018, and the ultimate denial of her N-400 naturalization application based on the improperly approved I-360 and I-485, is arbitrary and capricious, violates her fundamental right to marry, and constitutes cruel and unusual punishment.

Even accepting as true that Plaintiff was not aware that her remarriage rendered her unqualified to file an I-360,[6] the USCIS's decision is reasonable and in accordance with the law.[7] The USCIS explained in its decision:

---

[6] The version of the I-360 form that Plaintiff completed in 2006 provided, "NOTE: Divorce or other legal termination of the marriage to the abuser after the self-petition is properly filed with USCIS will not be the sole basis for denial or revocation of an approved self-petition. If you remarry before you become a lawful permanent resident, however, your self-petition will be denied or the approval revoked." Form I-360 Instructions (Rev. 10/26/05)Y Page 2.

[7] See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–43 (1984) ("When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."); CBS Corp. v. F.C.C., 663 F.3d 122, 137 (3d Cir. 2011) ("Our standard of review of agency decisions is governed by the Administrative Procedure Act, 5 U.S.C. § 706. Under the Administrative Procedure Act, we 'hold unlawful and set aside agency action, findings, and conclusions' that are found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' The scope of review under the 'arbitrary and capricious' standard is 'narrow, and a court is not to substitute its judgment for that of the agency.' Nevertheless, the agency must reach its decision by 'examin[ing] the relevant data,' and it must 'articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'") (internal citations omitted).

> The marriage and divorce documentation provided to USCIS makes clear that you did not disclose your true marital status and your true marital history at the time of your Form 1-360. On your Form 1-360, you stated that you were divorced and that you have only been married once. This information, however, was not true and correct. Before you filed your Form 1-360 and before USCIS made a decision on your Form 1-360, you married a different individual than the one through whom you claimed abuse. You never notified USCIS that the information was incorrect or that you remarried even though USCIS sent you multiple notices requesting additional information and evidence before making a final decision on your Form 1-360. Instead, you continued to pursue the approval of your Form 1-360 as if you were divorced and as if you had only been, married once.[8]
>
> Your marital history and your marital status was material to your eligibility to self-petition as the abused spouse of a United States citizen. An applicant who is filing a Form I-360 [] as the abused spouse of a United States citizen is not required to be married to the abusive spouse at the time of filing the Form 1-360 or remain married to the abusive spouse until the approval of the Form 1-360. An applicant, however, must not remarry a different individual before the approval the Form 1-360. Remarriage prior to the approval of the Form 1-360 is a statutory basis for the denial of a self-petition. Remarriage prior to the approval of the Form 1-360 is also a statutory basis for automatically revoking an approved self-petition.
>
> Your remarriage would have resulted in the denial of your Form I-360 if you had truthfully disclosed your marital status or your marital history at the time of your self-petition. Your remarriage should have resulted in the automatic revocation of your approved Form 1-360 after you disclosed your marital status and your marital history at the time of your application for adjustment of status.
>
> Therefore, USCIS approved your Form 1-485 in error. . . . To qualify for naturalization under INA 316, you must demonstrate that you meet all the requirements for

---

[8] This finding contradicts Plaintiff's contention that USCIS fully understood the timeline of Plaintiff's divorce and remarriage.

14

>   naturalization including the requirement of having been lawfully admitted for permanent residence. You have not demonstrated that you have been lawfully admitted for permanent residence and, therefore, are ineligible for naturalization.

(Docket No. 22-2 at 98-101.)[9]

These findings are in accordance with the INA, VAWA, and VTVPA, as set forth in detail above, and the USCIS provides a rational and reasonable explanation for the denial of Plaintiff's N-400 naturalization application.  The Court has no basis to find that this decision is arbitrary and capricious and must be set aside.  See Chevron, 467 U.S. at 842–43; CBS Corp., 663 F.3d at 137, *supra* note 6; Obianyo v. U.S.C.I.S. Pennsylvania, 2019 WL 1375798, at *5-6 (D.N.J. 2019) (explaining that the power to grant citizenship has not been conferred upon the federal courts, and once there has been a determination that a person does not qualify for citizenship because of failure to satisfy the statutory requirements, the court has no discretion

---

[9] The USCIS explained that "[n]ormally cases of unlawful adjustment are put into removal proceedings and heard before an Immigration Judge," but as of 2009 USCIS policy within the Third Circuit had changed, and the Department of Homeland Security (DHS) was barred "from commencing removal proceedings against an individual who has been a lawful permanent resident for more than five years even though evidence may exist in support of erroneous adjust to that status."  (Docket No. 22-2 at 101.) The USCIS further explained, "Although you will not be placed into removal proceedings at this time, the fact that you were adjusted unlawfully remains as does your ineligibility to naturalize as a United States citizen."  (Id.)  The USCIS therefore denied Plaintiff's N-400 application for naturalization.  (Id.)

to ignore that finding and grant citizenship) (citing Koszelnik v. Sec'y of Dep't of Homeland Sec., 828 F.3d 175, 182 (3d Cir. 2016) ("[This court] lacks equity powers to override statutory requirements.") (citing I.N.S. v. Pagilinan, 486 U.S. 875, 885 (1988)).

Moreover, this Court's limited review of the USCIS's properly supported decision does not enable this Court to grant the additional relief Plaintiff seeks - a declaration that the current version of VTVPA, and its application to Plaintiff and others, impinges on a person's fundamental right to marry[10] and constitutes cruel and unusual punishment.

There are "two sources of citizenship, and two only: birth and naturalization." Miller v. Albright, 523 U.S. 420, 423-24 (1998) (quoting United States v. Wong Kim Ark, 169 U.S. 649, 702

---

[10] Plaintiff cites to Obergefell v. Hodges, 576 U.S. 644, 675–76 (2015) to support her contention that Congress's restriction on an abused spouse's ability to remarry prior to filing an I-360 application is a violation of her fundamental right to marry. In Obergefell, the Supreme Court held that "the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty." Obergefell, 576 U.S. at 675. Obergefell is inapposite to the immigration context. See Bakran v. Secretary, United States Department of Homeland Security, 894 F.3d 557, 565 (3d Cir. 2018) (explaining that the benefits of marriage identified in Obergefell did not align with certain immigration benefits). Additionally, the VTVPA does not prevent a person from getting married, it only potentially impacts that person's ability to become a lawful permanent resident or citizen.

16

(1898)). It is not within the power or province of this Court to make judicial exceptions to statutory requirements for individuals seeking naturalization. Obianyo, 2019 WL 1375798, at *5-6 (citing United States v. Macintosh, 283 U.S. 605, 626 (1931)). Judicial deference to the Executive Branch – which is charged with the enforcement of immigration and naturalization laws – is especially appropriate in the immigration and naturalization context. Id. (citing I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 424-25, (1999) (citing I.N.S. v. Abudu, 485 U.S. 94, 100 (1988)).

The prerequisites for naturalization and citizenship require strict compliance and only those who comply with those statutory requirements are to be granted the right of naturalization and citizenship. Id. (citing Fedorenko v. United States, 449 U.S. 490, 506 (1981) (holding that courts must exercise strict compliance with all congressionally imposed prerequisites for citizenship) (internal citations omitted); United States v. Ginsberg, 243 U.S. 472, 474-75 (1917) ("An alien who seeks political rights as a member of this nation can rightfully obtain them only upon terms and conditions specified by Congress.")).

Thus, the law provides that a divorced person of an abusive ex-spouse may apply for citizenship through an I-360 self-petition within two years of the dissolution of that marriage,

and during those two years the person may remarry after she has filed an I-360 and it has been approved.  However, current law excludes the approval of an I-360 application if the person filing the application has remarried before the application, as happened here.  It is for Congress, and not this Court, to modify that exclusion if it determines it is warranted in doing so.  See Trump v. Hawaii, 138 S. Ct. 2392, 2418 (U.S. 2018) (quoting Fiallo v. Bell, 430 U.S. 787, 792 (1977)) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'"); Fiallo, 430 U.S. at 792 ("This Court has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens."); see also Delmas v. Gonzales, 422 F. Supp. 2d 1299, 1304 (S.D. Fla. 2005) ("[T]he Plaintiff was not prevented from remarrying by § 1154. Rather she faced a dilemma; the fact that remarriage prior to approval of the self-petition would disqualify her from obtaining lawful permanent residence as an abused spouse was a factor to consider in deciding whether to marry at that time or wait until her petition was approved. Congress could reasonably conclude that an abused spouse who chooses to remarry before approval of her self-petition based on the abuse of a former

spouse is no longer in need of protection. Therefore, the AAO's interpretation of § 1154 does not burden Plaintiff's ability to marry in a way that would violate the Constitution.").

## CONCLUSION

It is well established that "[n]o alien has the slightest right to naturalization unless all statutory requirements are complied with." United States v. Ginsberg, 243 U.S. 472, 474-475 (1917).  Here, even though Plaintiff may feel that the denial of her naturalization application is unjust and unfair, especially considering the abuse she overcame to become a productive and positive resident of the United States since her arrival in the early 2000s, this Court finds no error in USCIS's denial of her application.  Plaintiff simply did not comply with "all statutory requirements" for citizenship.  Consequently, the Court will deny Plaintiff's motion for summary judgment, and grant Defendants' motion for summary judgment in their favor.

An appropriate Order will be entered.


Date: August 2, 2021               s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.